UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
LYDIA PRUITT,

                              Plaintiff,

                         -against-

THE CITY OF NEW YORK, DETECTIVE ERIC GIULIANI
(NYPD) SHIELD #4136, DETECTIVE KEITH MCDOWELL,
CAPTAIN KENNETH HARSCH, LIEUTENANT JOHN
COSTIN, SERGEANT MICHAEL WEBER, DETECTIVE
MICHAEL PARKS, DETECTIVE HEROLD ALEXIS,
DETECTIVE JOHN PAUL JACCARD, DETECTIVE
NELSON, OFFICER(S) JOHN DOE #1-10 (THE NAME
JOHN DOE BEING FICTITIOUS, AS THE TRUE NAME(S)
 IS/ARE PRESENTLY UNKNOWN),

                              Defendants.
------------------------------------------------------------------------X

Index No.: 16-CV-4438
(KAM)(CLP)

**FIRST AMENDED
COMPLAINT**

**JURY TRIAL
DEMANDED**

     The Plaintiff, complaining by her attorney(s) at the LAW OFFICE OF ANDREW L.

HOFFMAN, P.C., respectfully shows to this Court and alleges:

**INTRODUCTION**

1.     This is an action to vindicate the rights of Lydia Pruitt, an elderly retired woman with a

heart condition, who was wrongfully arrested following a warrantless invasion of her home.

2.     At approximately 6:45AM on the date in question, police burst through Ms. Pruitt's front

door with guns drawn as she was in the bathroom readying herself for a doctor's appointment.

3.     The officers stated they were searching for a woman in a picture that they showed Ms.

Pruitt, and whom Ms. Pruitt did not know.

1

4.      It has since been revealed that the officers were in possession of a search warrant—but not to enter Apartment 1F, on the first floor, where Ms. Pruitt lived.

5.       Instead, the officers had a warrant to enter Apartment 2F, on the second floor, that was said to be occupied by someone with a totally different name and physical description than Ms. Pruitt.

6.      Confused and terrified, Ms. Pruitt showed police her identification to at least establish who she was, and that she was *not* the person for whom the officers claimed to be searching.

7.      In response, rather than apologize and take steps to rectify what had obviously been a wrongful entry, police set about trying to justify their actions—forcing Ms. Pruitt out of her apartment and into the hallway, throwing her against the wall, and handcuffing her.

8.      Police then proceeded to rifle through Ms. Pruitt's personal belongings, dumping out her heart medications from their duly prescribed bottles, and leaving her modest apartment, where she lived alone, a mess.

9.      Shortly thereafter, Ms. Pruitt, was taken to the 79th precinct, where she was eventually presented with a desk appearance ticket, charging her nonsensically with Criminal Possession of a Controlled Substance in the Seventh Degree.

10.      Police would later falsely allege to have recovered a marijuana cigarette and other drug paraphernalia from the scene, none of which was sent to a lab for testing, checked for finger prints or DNA, or notated in the officers' memo books per departmental protocols.

11.      When Ms. Pruitt appeared in Court pursuant to the ticket, the prosecution announced that it was not ready and would be in touch with Ms. Pruitt regarding a future court date.

12.      On December 3, 2015, some seven months after Ms. Pruitt's wrongful arrest, the District Attorney's office wrote to Ms. Pruitt, informing her that it was declining to prosecute.

13.     In explaining its reasons for declining to prosecute, the Kings County District Attorney's office cited, "insufficient paperwork," that "PO failed to appear in a timely manner on a problem case," and that "case cannot be prosecuted in a timely manner."

14.     As set forth more fully herein, several of the Defendant officers in this case have been the subject of similar allegations in other civil rights lawsuits, some of whom have been named multiple times.

15.     Defendants in this case are now being sued for their respective roles in the violation of Ms. Pruitt's rights.

16.     The City of New York is being sued for failing to properly train, supervise, and/or discipline New York City police officers, and for continuing to tolerate, ratify, and otherwise defend officers repeatedly accused of similar misconduct, and a widely publicized departmental culture of willful indifference toward the rights of citizens.


**THE PARTIES**

17.     At all times relevant herein, Plaintiff, LYDIA PRUITT, occupied an apartment at the residence located at 235A Lexington Avenue, Apt. 1F, Brooklyn, New York.

18.     Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, and that at all times relevant all Defendant officers were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

19.     Upon information and belief, at all times hereinafter mentioned, the Defendant, CITY OF NEW YORK, its agents, servants, and employees, operated, maintained and controlled the New York City Police Department, including all the police officers thereof.

20.     Upon information and belief, at all times hereinafter mentioned, Defendant Detective ERIC GIULIANI, DETECTIVE KEITH MCDOWELL, CAPTAIN KENNETH HARSCH, SERGEANT MICHAEL WEBER, LIEUTENANT JOHN COSTIN, DETECTIVE MICHAEL PARKS, DETECTIVE HEROLD ALEXIS, DETECTIVE JOHN PAUL JACCARD, DETECTIVE NELSON and POLICE OFFICER(S) DOE #1-10[1] were employed by the Defendant CITY OF NEW YORK, as members of its police department.

21.     Upon information and belief, at all times hereinafter mentioned, all Defendant Police Officers, be they known or unknown, were assigned to Narcotics Borough Brooklyn North, in the City of New York.

22.     The New York City Police Department is a local governmental agency, duly formed and operating under and by virtue of the Laws and Constitution of the State of New York and the police chief of the New York City Police Department is responsible for the policies, practices, and customs of the New York City Police Department as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees, and is the final decision maker for that agency.

23.     This action arises under the United States Constitution, particularly under provisions of the Fourth and Fourteenth Amendments of the Constitution of the United States, and under

---

[1] Plaintiff's diligent search for the identity of all officers involved remains ongoing.  Accordingly, the Corporation Counsel is on notice that the plaintiff intends to name every officer involved as defendants once their identities are revealed through discovery.  All appropriate steps to prepare the officers' defenses and otherwise inform them that they will be individually named should be undertaken forthwith.

federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, the rights guaranteed by the Constitution, and the laws of the State of New York.

24.    Individual Defendants in this action are being sued in both their individual and official capacities.

## VENUE

25.    Venue lies in this District pursuant to 28 U.S.C.A. Section 1391(b) (2) since the events giving rise to the claim occurred in the Eastern District.

## STATEMENT OF FACTS

26.    On May 14, 2015 at about 6:45AM, Plaintiff LYDIA PRUITT was in the bathroom of her first floor apartment, located at 235A Lexington Avenue, Apt. 1F, Brooklyn, NY 11216, getting ready to attend a doctor's appointment.

27.    Suddenly, multiple police officers,[2] including those named as Defendants here, burst through the door to Ms. Pruitt's apartment.

---

[2] Upon information and belief, several of the named Defendants have been named in prior civil rights suits. **Detective Giuliani** has been named as a Defendant in at least two prior civil rights suits: 1) Caesar v. City of New York, et al., 15-CV-3759 (allegations of false arrest, fabrication of evidence; as here, Kings County D.A. declined to prosecute); 2) Feliciano v. City of New York, et al., 15-CV-03382 (allegations of false arrest, excessive force, and fabrication of evidence). **Detective McDowell** has been named in at least four prior civil rights suits: 1) Bravo v. City of New York, et al., 10-cv-2510 (allegations of Illegal Search, Excessive Force, and False Arrest); 2) Arthur v. City of New York, et al., 10-cv-1038 (allegations of false arrest and excessive force); 3) Pollock, et al., v. Tam, et al., 08-CV-4316 (allegations of excessive force); 4) Jefferson v. City of New York, et al., 12-cv-2103 (allegations of  illegal search, fabrication of evidence, and false arrest). **Lieutenant Costin** has been named in at least seven prior civil rights suits: 1) Legrand, et al. v. City of New York, et al., 12-cv-6165 (allegations of Illegal Search, False Arrest, Excessive Force); 2) Greaves v. City of New York, et al., 14-CV-1377 (allegations of illegal Search, False Arrest, Fabrication of Evidence); 3) Clark, et al.v. City of New York, et al., 12-CV-243 (allegations of Illegal Search, False Arrest, Fabrication of Evidence); 4) Durant v. City of New York, et al., 13-CV-1973 (allegations of illegal Search, False Arrest, Fabrication of Evidence, Excessive Force); 5) DeLeon v. City of New York, et al., 12-CV-257 (allegations of Illegal Search, False Arrest, Fabrication of Evidence, Excessive Force); 6) LeGrand v. Costin  et al., 15-CV-2906

28.     One of the officers, upon information and belief, Detective Keith McDowell, who was assigned to "cuff" and "toss" the apartment (and was perhaps nicknamed "Huggy Bear") grabbed Ms. Pruitt from the bathroom, dragged her into the hallway outside of her apartment, threw her against a wall injuring her knee, and then roughly handcuffed her.

29.     Upon information and belief, the officers were not in possession of an arrest or search or warrant, and their entry was completely unauthorized.

30.     Lydia Pruitt had not committed any crime, and there was no probable cause to arrest her.

31.     Nevertheless, while Ms. Pruitt was handcuffed in the hallway, multiple officers including the named Defendants proceeded to search her home.

32.     Officers dumped Ms. Pruitt's heart medications from their duly prescribed bottles, tossing clothing and papers crudely into the middle of Ms. Pruitt's bed.

33.     After almost an hour of ransacking Ms. Pruitt's apartment, officers put Ms. Pruitt in a van and took her to the 79th Precinct.

34.     At the 79th Precinct, Ms. Pruitt was charged with Criminal Possession of a Controlled Substance in the Seventh Degree and presented with a desk appearance ticket.  Defendant Giuliani was listed as her arresting officer.

35.     Ms. Pruitt was finally released at approximately 9:00 AM.

---

(allegations of Illegal Search, False Arrest, Fabrication of Evidence, Excessive Force); 7) Foy v. City of New York, et al, 13-CV-1972 (allegations of False Arrest, Intentional/Negligent Emotional Distress); **Detective Jaccard** has been named in at least two prior civil rights suits: 1) Rivera v. City of New York et al., 11-CV-4187 (allegations of False Arrest and Excessive Force); 2) Blackmon, et al., v. City of New York, et al., 08-CV-3938 (allegations of Illegal Search, False Arrest, Excessive Force, Fabrication of Evidence); **Detective Parks** has been named in at least two prior civil rights suits: 1) Holiday, et al., v. City of New York, et al., 13-CV-735 (allegations of Excessive Force, Illegal Search, False Arrest); 2) Jefferson v. City of New York, et al., 12-cv-2103 (allegations of  Illegal Search, Fabrication of Evidence, and False Arrest).  **Detective Alexis** has been named in at least two prior civil rights suits: 1) Glover v. City of New York, et al., 14-CV-5460 (allegations of Illegal Search, False Arrest); 2) Caesar v. City of New York, et al., 15-cv-3759 (allegations of False Arrest, Fabrication of Evidence; as here, Kings County D.A. declined to prosecute).

36.     At Ms. Pruitt's June 8, 2015 court appearance, the prosecution reported that it was not ready, and would contact Ms. Pruitt regarding a date for her next appearance.

37.     However, it was not until almost seven months later, on or about December 3, 2015, after a request from Plaintiff's attorney, that Ms. Pruitt was informed that the District Attorney had declined to prosecute her.

38.     It has since been revealed that the officers were in possession of a search warrant when they entered Ms. Pruitt's apartment—but not to enter Apartment 1F, on the first floor, where Ms. Pruitt lived.

39.      Instead, the officers had a warrant to enter Apartment 2F, on the second floor, that was said to be occupied by someone with a totally different name and physical description than Ms. Pruitt.

40.     Rather than apologize and take steps to rectify what had obviously been a wrongful entry, police set about trying to justify their actions—forcing Ms. Pruitt out of her apartment and into the hallway, throwing her against the wall, and handcuffing her.

41.     Police would later falsely allege to have recovered a marijuana cigarette and other drug paraphernalia from the scene, none of which was sent to a lab for testing, checked for finger prints or DNA, or notated in the officers' memo books per departmental protocols.

42.     When Ms. Pruitt appeared in Court pursuant to the ticket, the prosecution announced that it was not ready and would be in touch with Ms. Pruitt regarding a future court date.

43.     On December 3, 2015, some seven months after Ms. Pruitt's wrongful arrest, the District Attorney's office wrote to Ms. Pruitt, informing her that it was declining to prosecute.

44.     In explaining its reasons for declining to prosecute, the Kings County District Attorney's office cited, "insufficient paperwork," that "PO failed to appear in a timely manner on a problem case," and that "case cannot be prosecuted in a timely manner."

45.     It remains unclear why the Defendant officers, several of whom have been repeatedly accused of illegal searches, fabricating evidence, and falsely arresting people with excessive force—have been allowed to continue, unquestioned, in their capacities as police officers.

46.     It is likewise unclear why the Kings County District Attorney's office has continued to quietly dismiss their cases without further investigation, or why the Corporation Counsel's office has continued to defend them in their multiple civil rights suits.

47.     Ms. Pruitt continues to suffer the terrible effects of her ordeal to this day.


**AS AND FOR THE FIRST CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF
AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights Under Color of State Law
-Warrantless Entry and Search of Home-**

48.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 47.

49.     The Fourth Amendment of the United States Constitution protects citizens from unreasonable searches and seizures by government officials.  Specifically, the Fourth Amendment precludes police officers from entering and otherwise searching someone's home in the absence of appropriate process—e.g., a warrant—or special circumstances.

50.     Defendant officers' entry into the home of the Plaintiff, and especially the search of the apartment occupied by Lydia Pruitt, in the absence of permission, a warrant, or exigent

circumstance, was clearly improper and represents a violation of the Plaintiff's rights under the

Fourth Amendment of the United States Constitution.

51.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983,

given that said actions were undertaken under color of state law.

52.     Defendants' actions were motivated by bad faith and malice.

53.     As a direct and proximate result of the unconstitutional acts described above, Ms. Pruitt

has been substantially injured.


### AS AND FOR THE SECOND CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF
### AGAINST ALL DEFENDANTS

**Violation of Constitutional Rights Under Color of State Law**
**-False Arrest/Imprisonment-**

54.     Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 53.

55.     The Fourth Amendment of the United States Constitution protects citizens from

unreasonable searches and seizures by government officials, and prohibits law enforcement

officers from arresting and detaining individuals in the absence of appropriate authorization.  It

also precludes police officers from conducting arrests in the absence of probable cause to believe

that a crime has been committed.

56.     The actions of the Defendants as stated herein violated Lydia Pruitt's rights under Federal

law.

57.     It is clear the Defendants lacked any objectively reasonable basis to support a legitimate

probable cause arrest.

58.     Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Lydia Pruitt.

59.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983, given that said actions were undertaken under color of state law.

60.     As a direct and proximate result of the unconscionable acts described above, Ms. Pruitt has been substantially injured.


### AS AND FOR THE THIRD CAUSE OF ACTION
### ON BEHALF OF THE PLAINTIFF
### AGAINST DEFENDANT DETECTIVE MCDOWELL

**Violation of Constitutional Rights Under Color of State Law**
**-Excessive Force-**

61.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 60.

62.     Defendant Detective McDowell used excessive force against the Plaintiff by physically forcing her into the hallway, slamming her knee into the wall, and roughly handcuffing her, as aforedescribed.

63.     Any force used against the Plaintiff was excessive because she had not committed a crime, she was a frail, elderly, 4'11 woman who she posed no threat to officers, she made no effort to resist arrest or flee, and there was no probable cause to believe she had committed a crime.

64.     Defendant's actions were motivated by bad faith and malice, and/or deliberate indifference to the rights of Ms. Pruitt.

65.     Defendant is liable for said damage and injuries pursuant to the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983, given that said actions were undertaken under

color of state law.

66.     As a direct and proximate result of the unconstitutional acts described above, Ms. Pruitt

has been substantially injured.

**AS AND FOR THE FOURTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights Under Color of State Law**
**-Failure to Intervene-**

67.     Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 66.

68.     The Fourth Amendment of the United States Constitution protects citizens from

unreasonable searches and seizures by government officials, and prohibits law enforcement

officers from entering private residences without the appropriate authorization.

69.     The actions of Defendant officers detailed above violated the Plaintiff's rights under the

United States Constitution.  It is widely recognized that all law enforcement officials have an

affirmative duty to intervene to protect the constitutional rights of citizens from infringement by

other law enforcement officers in their presence.

70.     Defendants' actions were motivated by bad faith and malice, and/or deliberate

indifference to the rights of the Plaintiff.

71.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983,

given that said actions were undertaken under color of state law.

72.     As a direct and proximate result of the unconstitutional acts described above, the Plaintiff

has been substantially injured.

**AS AND FOR THE FIFTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**AGAINST ALL DEFENDANTS**

**Violation of Constitutional Rights Under Color of State Law**
**-Denial of Constitutional Right to Fair Trial Due to Fabrication of Evidence-**

73.     Plaintiff incorporates by reference and realleges each and every allegation stated in

Paragraphs 1 through 72.

74.     Defendants created false evidence against Plaintiff Lydia Pruitt.

75.     Defendants forwarded false and material evidence to prosecutors in the Kings County

District Attorney's office.

76.     Defendants misled the judge and the prosecutors by creating false evidence against

Plaintiff Lydia Pruitt.

77.     In creating false evidence against Plaintiff Lydia Pruitt and in forwarding false evidence

and information to prosecutors, Defendants violated Plaintiff's constitutional right to a fair trial

under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United

States Constitution.

78.     This conduct on the part of Defendants also represents a violation of 42 U.S.C. § 1983,

given that said actions were undertaken under color of state law.

79.     As a direct and proximate result of the unconstitutional acts described above, Lydia Pruitt

has been substantially injured.

**AS AND FOR THE SIXTH CAUSE OF ACTION**
**ON BEHALF OF PLAINTIFF**
**AGAINST THE DEFENDANT CITY OF NEW YORK**

**- Implementation of Municipal Policies, Practices, and Customs that Directly Violate Constitutional Rights, Failure to Implement Municipal Policies to Avoid Constitutional Deprivations and Failure to Train and Supervise Employees Under Color of State Law-**

80.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 79.

81.     Upon information and belief, Defendant Supervisors Harsch, Costin, Weber, and Doe(s) were directly responsible for supervising the other named Defendants and John Doe(s) #1 – 10.

82.     Upon information and belief, Defendant City of New York and Supervisors(s) Harsch, Costin, Weber, and Doe(s), who were supervisors and final decision makers, as a matter of policy, practice, and custom, have acted with a callous, reckless and deliberate indifference to the Plaintiff's constitutional rights and laws of the United States, in that they failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, including not making warrantless entries and searches of people's homes, falsely arresting people, and fabricating evidence.

83.     In the alternative, and upon information and belief, Defendants instituted policies addressing the topics listed above, but through a culture of gross negligence, carelessness, and malice displayed by New York City police officers, demonstrated a deliberate and willful indifference to the constitutional rights of the Plaintiff.

84.     Upon information and belief, in 2011, Kings County District Attorney Charles Hynes created the Conviction Integrity Unit in response to an ever-increasing number of wrongful convictions.

85.     Upon information and belief, in or about July of 2013, the Kings County District Attorney's efforts substantially expanded, as the office announced the formation of an unprecedented panel of former prosecutors, professors, and retired judges to review as many as

50 convictions involving a former Kings County detective, Louis Scarella, who is alleged to have regularly sought false statements from witnesses, and whose work appears to have sent an array of innocent citizens to prison.

86.     Upon information and belief, another former Kings County Detective, Michael Race, whose work has also been linked to the conviction of innocents, has been quoted in press accounts as stating that of the 750 murder investigations he ran, only one was "done the correct way, A to Z."

87.     Long time Kings County District Attorney Charles Hynes was recently voted out of office amidst widespread[3] allegations of misconduct.

88.     In August of 2013, federal Judge Shira A. Sheindlin of the Southern District of New York found the New York City Police Department resorted to a "policy of indirect racial profiling" as officers routinely stopped "blacks and Hispanics who would not have been stopped if they were white."  The Plaintiff in this case is African American.

89.     It is also true that following the landmark Floyd v. City of New York, 959 F.Supp. 2d 540 (S.D.N.Y. 2013), Judge Scheindlin appointed a monitor to oversee the N.Y.P.D.'s compliance with Court Ordered remedies.  (Id. at 543.)  While the "stop and frisk" in Floyd is not specifically at issue in the present case, the related issue of inadequate monitoring and supervision of officers certainly is—and it is notable that the N.Y.P.D. monitor's most recent (2/16/2016) report emphasized that departmental reforms "need[] to be communicated and

---

[3] See e.g., Charles Hynes, Scandal-Plagued District Attorney, Faces Verdict at the Polls, ProPublica, September 6, 2013, available at http://www.huffingtonpost.com/2013/09/06/charles-hynes-brooklyn-district-attorney-election_n_3881395.html; Brooklyn DA Charles Hynes in the Hot Seat for Protecting Prosecutor Who Imprisoned Innocent Man, New York Daily News, November 16, 2012, available at http://www.nydailynews.com/new-york/b-klyn-da-charles-hynes-hot-seat-wrongful-conviction-article-1.1203342; Ex-Brooklyn Prosecutor Charles J. Hynes Accused of Misues of Funds, New York Times, available at http://www.nytimes.com/2014/06/03/nyregion/charles-hynes-brooklyn-district-attorney-inquiry.html.

reinforced better, not just at the top, but throughout the Department….Ultimately, this is a challenge of leadership, particularly for those who supervise officers engaged in day-to-day enforcement activities—sergeants, their immediate supervisors, and the precinct and unit commanders who set the tone for those under them.  This challenge implicates every aspect of the court orders and the parties' agreements, and it will not be met without changes in policies, training, supervision, and all the ways the NYPD incentivizes good police behavior and discourages unacceptable behavior.  This is a large task that will take time and substantial effort to accomplish."

90.     The nature, regularity, and scale of such revelations, and the extraordinary efforts being undertaken in response to a highly publicized slew of wrongful convictions, gives rise to an inference of systemic incompetence and corruption on the part of the New York City Police Department, as such a legacy of injustices cannot plausibly be laid at the feet of a few rogue officers.

91.     The policies, procedures, customs and practices of the above-named Defendants violated the Constitutional rights of the Plaintiff under the Fourth Amendment of the United States Constitution.

92.     This conduct on the part of Defendants City of New York and Supervisors Doe also represents a violation of 42 U.S.C § 1983, given that said actions were undertaken under color of state law.

93.     As a direct and proximate result of the unconstitutional acts described above, the Ms. Pruitt has been substantially injured.

## STATE CLAIMS

94.     Notice of the Plaintiff's claim, the nature of the claim and the date of, the time when, the place where and the manner in which the claim arose was timely served upon the Comptroller of the City of New York and assigned Claim No. 2015PI016151.

95.     Plaintiff was produced for a hearing pursuant to Section 50h of the General Municipal Law on March 22, 2016.

96.     More than 30 days have elapsed since the Notice of Claim was served upon the Defendant City of New York and said Defendant has neglected to initiate any settlements thereof.

97.     This action is being commenced within One Year and Ninety-Days of the date the cause of action arose.

**AS AND FOR THE SEVENTH CAUSE OF ACTION
ON BEHALF OF THE PLAINTIFF
AGAINST ALL DEFENDANTS**

**-Trespass-**

98.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 97.

99.     Defendant Officers, without the consent or authority and against the will of the Plaintiff, intentionally entered the Plaintiff's property by forcing their way into her home at gun point.

100.    The forceful entry occurred when Defendants burst through the front door of the premises.

101.    As a direct and proximate result of the Defendants' conduct as described above, the Plaintiff has been substantially injured.

**AS AND FOR THE EIGHTH CAUSE OF ACTION
ON BEHALF OF PLAINTIFF**

## AGAINST ALL DEFENDANTS

### -False Arrest/Imprisonment-

102.    Plaintiff incorporates by reference and realleges each and ever allegation stated in Paragraphs 1 through 101.

103.    Defendants intended to confine the Plaintiff.

104.    The Plaintiff was conscious of the confinement.

105.    The Plaintiff did not consent to the confinement.

106.    The confinement was not otherwise privileged.

107.    The Defendants lacked any objectively reasonable basis to support a legitimate probable cause arrest.

108.    Defendants' actions were motivated by bad faith, malice, and/or deliberate indifference to the rights of Ms. Lydia Pruitt.

109.    As a direct and proximate result of the unconscionable acts described above, the Plaintiff has been substantially injured.

## AS AND FOR THE NINTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST DEFENDANT MCDOWELL

### -Assault and Battery-

110.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 109.

111.    As set forth above, Defendant McDowell committed assault and battery on Plaintiff by causing Plaintiff to be in apprehension of imminent, harmful and offensive contact, and in fact, making harmful and offensive contact with the Plaintiff; in so doing, Doe violated Plaintiff's

rights under New York law, without just cause or legal right, willfully and maliciously attacking the Plaintiff with unnecessary force.

112.     The actions of the officer were intentional, unlawful, and unwarranted, and in violation of Penal Law Section 35.30 of the State of New York and of Article 140 of the Criminal Procedure Law of the State of New York.

113.     As a direct and proximate result of the Defendant's conduct as described above, the Plaintiff has been substantially injured.

## AS AND FOR THE TENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST ALL DEFENDANTS

### -Intentional Infliction of Emotional Distress-

114.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 113.

115.     At all times mentioned herein, Defendants' conduct was intentional, extreme and outrageous.

116.     As a direct and proximate result of the unconstitutional acts described, the Plaintiff has suffered severe emotional distress.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST ALL DEFENDANTS

### -Negligent Infliction of Emotional Distress-

117.     Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 116.

118.    As a direct and proximate result of the Defendants' outrageous departure from accepted standards of care, Plaintiff was caused to suffer severe emotional distress.

## AS AND FOR THE TWELFTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST ALL DEFENDANTS

### -Negligence-

119.    Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 118.

120.    At all relevant times, Defendants owed Ms. Pruitt a common law duty to use reasonable care in carrying out their business of policing.

121.    Defendants breached their duty of reasonable care to the Plaintiff by executing a search warrant on the wrong apartment, then seeking to cover-up their mistake by fabricating evidence and falsely arresting Ms. Pruitt.

122.    As a result of the aforedescribed, Ms. Pruitt has been substantially damaged.

## AS AND FOR THE THIRTEENTH CAUSE OF ACTION
## ON BEHALF OF PLAINTIFF
## AGAINST THE DEFENDANT SUPERVISORS HARASCH, COSTIN, WEBER, DOE(S)
## AND THE CITY OF NEW YORK

### -Negligent Hiring, Retention, and Supervision-

123.    Plaintiff incorporates by reference and realleges each and every allegation stated in Paragraphs 1 through 122.

124.    At all times relevant, Defendants were negligent, careless, and reckless in hiring, retaining, supervising, and promoting as and for its employees, "the officers" herein, in that said officers, as employees of the City of New York, were not qualified to be hired or retained or promoted as police officers, lacked the experience, deportment, skill, training, and ability to be employed by the Defendant City of New York; to be retained by the Defendant City of New York; and to be utilized in the manner that each was employed on the day in question.

125.    At all times relevant, Defendants failed to exercise due care and caution in its hiring, retaining, and/or promoting practices; in that the Defendant City of New York failed to adequately investigate said police officers' backgrounds; adequately screen and test the Defendant police officers; failed to adequately monitor the Defendant police officers; failed to properly discipline officers who violate Patrol Guidelines; failed to properly train and retrain the Defendant police officers; and the Defendant City of New York, its agents, servants, and/or employees, were otherwise careless, negligent, and reckless.

126.    The aforesaid occurrence and the resulting injuries to the Plaintiff, were caused wholly and solely by reason of the negligence or deliberate indifference of the Defendant City of New York, its agents, servants, and/or employees without any negligence on the part of the Plaintiff contributing thereto.

127.    That by reason of the aforesaid, Ms. Pruitt has been substantially damaged.


## **DEMAND FOR TRIAL BY JURY**

128.    The Plaintiff hereby demands a trial by jury.


## **PRAYER FOR RELIEF**

20

WHEREFORE, the Plaintiff LYDIA PRUITT request that this Honorable Court grant her the following relief:

A.  A judgment in favor of Plaintiff against Defendants for compensatory damages in an amount to be determined by a properly charged jury;

B.  A judgment in favor of the Plaintiff against Defendants for punitive damages in an amount to be determined by a properly charged jury; Plaintiff does not demand punitive damages against the City of New York.

C.  A monetary award for attorneys fees and costs of this action, pursuant to 42 U.S.C. § 1988;

D.  Any other relief this Court finds to be just, proper, and equitable.

Dated:  New York, New York
        December 20, 2016

Respectfully Submitted By:


_____/s/_____
Andrew L. Hoffman, Esq.
Law Office of Andrew L. Hoffman, P.C.
261 Madison Avenue, 12 Floor
New York, New York 10016
T: (212) 736-3935
E: ahoffman@andrewhoffmanlaw.com